J-S40036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CURRY ROBINSON, | : | |
| | : | |
| Appellant | : | No. 2396 EDA 2014 |

Appeal from the PCRA Order entered on July 15, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0601281-2005

BEFORE:  BOWES, MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JUNE 28, 2016**

Curry Robinson ("Robinson") appeals, *pro se*, from the Order dismissing his Petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court set forth the relevant factual history in its Opinion, which we adopt herein for purposes of this appeal.  **See** PCRA Court Opinion, 12/4/14, at 3-8.  The PCRA court also set forth the relevant procedural history in its Pa.R.A.P. 1925(a) Opinion, which we adopt herein for purposes of this appeal.  **See** PCRA Court Opinion, 6/2/15, at 1-5.[2]

On appeal, Robinson raises the following issues for our review:

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] In its recitation of the procedural history of this case, the PCRA court erroneously indicated that Robinson was found guilty following a jury trial on January 12, 2015.  In fact, Robinson was found guilty following a non-jury trial on January 4, 2006.

1. Whether[] [Robinson's] due process rights were violated[,] where the [trial] court broaden[ed] the alleged sexual assaults over several years[,] and [were] all prior counsel ineffective for failing to raise this issue?

2. Whether[ Robinson] was prejudiced by trial counsel for stipulating to the [Sex Offender Assessment Board ("SOAB")] finding[] that [Robinson] is a [sexually violent predator ("SVP")] without fully comprising [*sic*] [Robinson] of how this course[] would [a]ffect [*sic*] [Robinson's] rights to challenge or appeal the [SOAB] findings[,] and [were] prior counsel ineffective for failing to raise this issue of trial counsel's ineffectiveness?

3. Whether[ Robinson's] due process rights [were] violated[] due to there being no colloquy regarding the stipulation to the [SOAB findings?]

4. Whe[]ther[] trial counsel['s] improprieties were []cumulative, and did [Robinson] suffer layered ineffectiveness?

5. Whether[] the [PCRA] court prematurely dismissed [Robsinson's PCRA Petition] without reviewing [Robinson's] issues of ineffective assistance of [PCRA] counsel[] for failing to amend issues of merit[,] *inter alia*[,] in [Robinson's] [R]espon[s]e[] to the court's [Pa.R.Crim.P.] 907 [N]otice[,] and was [PCRA] counsel ineffective for failing to amen[d] [Robinson's] issues?

Brief for Appellant at 1 (issues renumbered for ease of disposition).[3]

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any

_____

[3] Robinson's brief addresses additional issues which were not identified in his Statement of Questions Involved. **See** Brief for Appellant at 15-25, 26-29, 30-33. As these issues were not included in the Statement of Questions Involved, we decline to address them. **See** Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

In his first issue, Robinson contends that he suffered a fatal "variance" due to the trial court's restatement of facts during trial, at the end of trial, at sentencing, and in its Opinion. Brief for Appellant at 10. Robinson points to the trial court's statements regarding Robinson's sexual abuse of the four female child victims as having taken place "between the years 1996 and 2002," and asserts that the 1996 date only pertains to one of the four child victims. *Id*. at 11. Robinson claims that the trial court's statements "broadened" the time period of the sexual assaults for the three other child victims "by creating the impression that all three aforesaid girls were allegedly being abused over several years." *Id*. Robinson argues that the trial court's statements created an impermissible variance, and prejudiced his ability to present an alibi defense. *Id*. at 12. Robinson contends that the trial court's alleged misstatements regarding the dates of the alleged sexual abuse improperly influenced its Opinion and the sentence imposed on Robinson. *Id*. at 11-12. Robinson asserts that the trial court substituted its own opinions regarding the dates of the alleged sexual abuse, and its actions

showed ill-will and bias. *Id*. at 11.[4]

Robinson concedes that his trial counsel pointed out to the trial court that the 1996 date pertained only to the sexual assaults on one of the child victims, but claims that the trial court ignored trial counsel's efforts to clarify the time period for the sexual assaults on the other three child victims. *Id*. Robinson asserts that his trial counsel was ineffective because counsel should have continued to object to the trial court's alleged misstatements regarding the dates of the alleged sexual assaults. *Id*. at 14.

Our review of the record discloses that this particular issue of trial counsel ineffectiveness was not raised before the PCRA court.[5] Therefore, we cannot address it on appeal. *See Commonwealth v. Santiago*, 855 A.2d 682, 691 (Pa. 2004) (stating that "a claim not raised in a PCRA petition cannot be raised for the first time on appeal."). Moreover, Robinson failed to raise this issue in his Concise Statement of matters to be raised on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not raised in the concise statement are waived); *see also Commonwealth v. Lord,* 719 A.2d 306,

---

[4] To the extent that Robinson seeks to raise a claim concerning trial court error, such a claim is not preserved for appellate review because he could have raised it previously. *See* 42 Pa.C.S.A. § 9544(b) (providing that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal"); *see also Commonwealth v. Ford*, 809 A.2d 325, 329 (Pa. 2002) (holding that petitioner's claims of trial court error, which could have been raised on direct appeal but were not, were waived under the PCRA).

[5] Robinson did not raise this claim in his *pro se* Petition; nor did his PCRA counsel raise it in the Amended Petition filed on Robinson's behalf.

309 (Pa. 1998) (holding that, if an appellant is directed to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived).[6]

In his second issue, Robinson contends that, although he spoke to trial counsel about stipulating to the SOAB findings, their conversation "does not demonstrate that [Robinson] was fully [ap]prised of the legal bounds automatically assumed by the [PCRA] court[,] *i.e.*[, that Robinson] cannot challenge the findings of the SOAB, if he[,] in fact[,] agreed to being a [SVP]." Brief for Appellant at 34 (capitalization omitted). Robinson asserts that he was not fully informed of the consequences of the stipulation, and did not knowingly and intelligently provide his consent to the stipulation. *Id*. Robinson claims that "trial counsel never spoke to [him] regarding any conversation he allegedly had with Dr. [Timothy] Foley, [and] thereby[] committed an ethical violation." *Id*. at 35 (capitalization omitted). Robinson argues that the PCRA court's statement that Robinson had witnesses at the SVP hearing is incorrect because (1) trial counsel had

---

[6] Robinson also asserts that his PCRA counsel failed to "discern" this issue. Brief for Appellant at 14. To the extent that Robinson seeks to raise a claim of PCRA counsel ineffectiveness regarding this issue, his claim is waived, as he failed to raise this issue in his *pro se* Response to the PCRA court's Rule 907 Notice of its intent to dismiss Robinson's Amended Petition. *See Commonwealth v. Henkel*, 90 A.3d 16, 29 (Pa. Super. 2014) (explaining that claims of PCRA counsel's ineffectiveness cannot be raised for the first time on appeal, and must be raised in response to a Rule 907 notice of dismissal or in a serial PCRA Petition).

already stipulated to the SOAB findings; and (2) Robinson's mother spoke on his behalf at the allocution stage of sentencing, not at the SVP hearing. *Id*.

Our review of the record discloses that Robinson's second issue, as it concerns trial counsel's ineffectiveness, was not raised before the PCRA court in either his *pro se* Petition or in the Amended Petition filed by PCRA counsel. Therefore, it is not preserved for appellate review. *See Santiago*, 855 A.2d at 691.[7]

In his third issue, Robinson contends that his trial counsel was ineffective because there was no colloquy to ensure that Robinson was fully informed when he agreed to stipulate to the findings of the SOAB evaluation. *Id*. Brief for Appellant at 34-35. However, Robinson points out that, "when [he] stipulated to the finding[s] of the SOAB evaluation," "the [trial] court ensured that … [Robinson] knew fully what this was saying about him[]." *Id*. at 35 (capitalization omitted).

Our review of the record discloses that Robinson's third issue, as it concerns trial counsel's ineffectiveness, was not raised before the PCRA court in either his *pro se* Petition or in the Amended Petition filed by PCRA counsel. Moreover, Robinson's third issue was not raised in his Concise

---

[7] To the extent that Robinson claimed, in his *pro se* Response to the PCRA court's Rule 907 Notice, that PCRA counsel was ineffective for failing to raise this issue of trial counsel's ineffectiveness, Robinson's claim on appeal appears to be limited to trial counsel's ineffectiveness. *See* Brief for Appellant at 33-36. Therefore, any claim of PCRA counsel's ineffectiveness in this regard is not preserved for appellate review.

Statement. Therefore, Robinson's third issue is waived. **See Santiago**, 855 A.2d at 691; **see also** Pa.R.A.P. 1925(b)(4)(vii).[8]

In his fourth issue, Robinson contends that he suffered not only the ineffectiveness of trial and direct appeal counsel, but also the ineffectiveness of PCRA counsel. Brief for Appellant at 37. Robinson asserts that he has suffered layered ineffectiveness of counsel because all prior counsel failed to raise the issues that he is now forced to raise *pro se*. **Id**. at 38.

The PCRA court determined that Robinson's fourth issue, as stated in his Concise Statement, was "too vague to permit meaningful review." **See** PCRA Court Opinion, 6/2/15, at 11. We agree with the reasoning of the PCRA court and affirm on this basis as to this issue. **See id**.; **see also Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) (holding that this Court may find waiver where a concise statement is too vague); **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) (holding that, when a court has to guess what issues an appellant is

---

[8] To the extent that Robinson claimed, in his *pro se* Response to the PCRA court's Rule 907 Notice, that PCRA counsel was ineffective for failing to raise this issue of trial counsel's ineffectiveness, Robinson's claim on appeal appears to be limited to trial counsel's ineffectiveness. **See** Brief for Appellant at 33-36. Therefore, any claim of PCRA counsel's ineffectiveness in this regard is waived.

appealing, that is not enough for meaningful review).[9]

In his final issue, Robinson contends that the PCRA court erred by dismissing his Petition without considering his *pro se* Response to the court's Pa.R.Crim.P. 907 Notice of its intent to dismiss the Amended Petition. **Id**. at 5. Robinson asserts that, based on the application of the "prisoner mailbox rule," his Response to the Rule 907 Notice was timely. **Id**. at 6. Robinson claims that the PCRA court issued its Rule 907 Notice on June 2, 2014, and that he gave his Response to prison officials on June 19, 2014, within the 20-day time period in which to respond. **Id**. According to Robinson, the Response was not mailed by prison authorities until June 23, 2014. **Id**. Robinson contends that, because his Response was timely delivered to prison authorities, the PCRA court should have considered his Response. **Id**. at 7-9.

"Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing." **Commonwealth v. Brandon**, 51 A.3d 231, 234 n.5 (Pa. Super. 2012) (citation omitted). However, the prisoner/appellant bears the burden of

---

[9] Moreover, Robinson has failed to discuss, let alone satisfy by a preponderance of the evidence, the three prongs of the ineffectiveness test for *each* of his ineffectiveness claims against *each* of his counsel. **See Commonwealth v. Ligons**, 971 A.2d 1125, 1138 (Pa. 2009) (holding that a PCRA petitioner must present argument as to each layer of ineffectiveness, establishing all three prongs of the ineffectiveness standard for each attorney). Thus, even if Robinson's layered ineffectiveness claim had not been waived for vagueness; we would have determined that he failed to properly develop his claim on appeal. **See id**.; **see also** Pa.R.A.P. 2119(a).

proving that he, in fact, delivered the appeal within the appropriate time period. *Commonwealth v. Jones*, 700 A.2d 423, 426 (Pa. 1997). The "cash slip" provided by prison authorities to an incarcerated petitioner, noting both the deduction from his account for the mailing to the prothonotary and the date of the mailing, constitutes sufficient proof of the date of mailing. *See id*.

Here, Robinson has attached to his brief a copy of his cash slip, which indicates that a deduction was made from his prison account on June 19, 2014, for the mailing of his *pro se* Response to the Rule 907 Notice to the prothonotary. The cash slip also indicates that the Response was received by the prison mailroom on June 20, 2014. Because Robinson has provided sufficient proof that he placed his Response in the hands of prison authorities for mailing within the 20-day period in which to respond to the PCRA court's Rule 907 Notice, we deem his Response timely. Thus, the PCRA court should not have disregarded Robinson's Response as untimely filed.

Nevertheless, Robinson is not entitled to relief. A petitioner is limited in terms of the issues that may be raised in responding to a Rule 907 notice. *See Commonwealth v. Rykard*, 55 A.3d 1177, 1192 (Pa. Super. 2014). After the PCRA court has issued a Rule 907 notice of dismissal, a petitioner may not raise new assertions of trial counsel ineffectiveness in his response to the notice. *See id*. Rather, in order to raise additional claims of trial

counsel ineffectiveness, the PCRA court must grant the petitioner leave to amend his petition. **See id**. Notwithstanding, as noted above, issues of PCRA counsel ineffectiveness must be raised in response to a Rule 907 notice of dismissal or in a serial PCRA petition, or they are waived. **See Henkel**, 90 A.3d at 29.

Our review of Robinson's *pro se* Response to the PCRA court's Rule 907 Notice reveals that Robinson's claim of PCRA counsel's ineffectiveness is based on PCRA counsel's failure to "present all of [Robinson's] issues in [the] [A]mended [Petition]." **See** *Pro Se* Response to Rule 907 Notice, 6/25/14, at 1; **see also id**. (wherein Robinson asserts "[b]y counsel[']s failure to present all of the issues that [Robinson] [*sic*] is forced to present herein."). In his Response, Robinson set forth three claims of trial counsel ineffectiveness that PCRA counsel purportedly failed to raise on Robinson's behalf.[10] Specifically, Robinson claimed that PCRA counsel was ineffective because he failed to raise claims that trial counsel was ineffective for (1) failing to raise and pursue an alibi defense based on the lack of specificity in the victims' testimony regarding the dates of the alleged sexual abuse, and

---

[10] Notably, on appeal, Robinson asserts new theories of PCRA counsel's ineffectiveness which were not raised in his Response to the Rule 907 Notice. **See** Brief for Appellant at 7 (arguing that "no efforts were made from [PCRA] counsel to investigate issues of [Robinson] being on detainer"); 8 (arguing that "[PCRA] counsel made no effort to contact Mr. Joel Flower for the proper verification, in order to present a character witness"). Because Robinson may not raise new claims of PCRA counsel's ineffectiveness for the first time on appeal, we cannot consider these claims. **See Henkel**, 90 A.3d at 21-30.

the fact that Robinson was incarcerated for a period of time that overlapped with the time frame provided by the child victims; (2) stipulating to the findings of the SOAB, and failing to present expert testimony at the SVP hearing; and (3) failing to object to the trial court's characterization of Robinson as the child victims' babysitter. **See** *Pro Se* Response to Rule 907 Notice, 6/25/14, at 2-11.

Although Robinson initially preserved these issues for our review by raising them before the PCRA court, he failed to state them with sufficient clarity in his Concise Statement. **See Hansley**, 24 A.3d at 415 (holding that this Court may find waiver where a concise statement is too vague); **Dowling**, 778 A.2d at 686 (holding that, when a court has to guess what issues an appellant is appealing, that is not enough for meaningful review). Accordingly, Robinson's claims of PCRA counsel's ineffectiveness are waived.[11]

In sum, although the PCRA court erred by deeming Robinson's *pro se* Response as untimely, we may affirm the PCRA court's decision to dismiss Robinson's Amended Petition on any grounds if the record supports it. **See Ford**, 44 A.3d at 1194. Based on our review of the record, including

---

[11] Moreover, Robinson has failed to discuss, let alone satisfy by a preponderance of the evidence, the three prongs of the ineffectiveness test for *each* of his ineffectiveness claims against *each* counsel. **See Ligons**, 971 A.2d at 1138. Thus, even if Robinson's claim of PCRA counsel's ineffectiveness had not been waived for vagueness; we would have determined that he failed to properly develop his claim on appeal. **See id**.; **see also** Pa.R.A.P. 2119(a).

Robinson's *pro se* Response to the PCRA court's Rule 907 Notice, Robinson is not entitled to relief. Therefore, we affirm the PCRA court's dismissal of Robinson's Amended Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2016

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
### CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
:
V. : CP 0506 0128 1/1
:
CURRY ROBINSON :

**FILED**

DEC 0 4 2014

Criminal Appeals Unit
First Judicial District of PA

**OPINION**

DeFino-Nastasi, J.

**PROCEDURAL HISTORY**

On January 4, 2006, after a bench trial before the Honorable Rose Marie DeFino-Nastasi, the Defendant was convicted of: one (1) count of Rape of a child less than thirteen (13) years of age as a felony of the first degree[1], complainant LM; one (1) count of Involuntary Deviate Sexual Intercourse (IDSI) of a child less than thirteen (13) years of age as a felony of the first degree [2], complainant LM; two (2) counts of Aggravated Indecent Assault – Child, as felonies of the second degree[3], complainants LM and KM; four (4) counts of Endangering the Welfare of Children (EWOC) as felonies of the third degree[4], complainants LM, TM, KM and TT; three (3) counts of Unlawful Contact with a Minor as misdemeanors of the first degree[5], complainants LM and TM and TT; four (4) counts of Indecent Assault as misdemeanors of the first degree[6], complainants LM, TM and KM and TT; one (1) count of Terroristic Threats as a misdemeanor of the first degree[7], complainant LM; four (4) counts of Corruption the Morals of Minors (CMOM)

CP-51-CR-0601281-2005 Comm. v. Robinson, Curry
Opinion



7230186791

---

[1] 18 Pa.C.S. 3121(c)
[2] 18 Pa.C.S. 3123(b)
[3] 18 Pa.C.S. 3125(b)
[4] 18 Pa.C.S. 4304
[5] 18 Pa.C.S. 6318
[6] 18 Pa.C.S. 3126(a)(7)
[7] 18 Pa.C.S. 2706

1

as misdemeanors of the first degree[8], complainants LM, TM and KM and TT; and two (2) counts of Indecent Exposure as misdemeanors of the first degree[9], complainants LM and TM.

The Defendant was sentenced on May 19, 2006 to five (5) to ten (10) years state incarceration on the Rape conviction, the same sentence to run concurrently on the IDSI conviction, two and one-half (2 ½) to five (5) years on the Aggravated Indecent Assault convictions, to run consecutively to the Rape sentence, five (5) years reporting probation on the Contact with Minors and Indecent Assault convictions to run consecutively to the Aggravated Indecent Assault conviction. The aggregate sentence was seven and one-half (7 ½) to fifteen (15) years followed by five (5) years reporting probation. On the same date, after a Megan's Law hearing, the Defendant was found to be a sexually violent predator.

The Defendant filed a Post Sentence Motion on May 30, 2006, that was denied without a hearing on May 31, 2006.

A notice of appeal was filed on June 26, 2006.

On February 26, 2008, the Superior Court affirmed the sentence of the trial court. The Superior Court found that the Defendant had not preserved his claims for review because of the vagueness of the 1925(b) statement filed with the trial court.

On April 8, 2008, the Defendant filed a petition under the Post Conviction Relief Act (PCRA). Defendant claimed ineffective assistance of counsel and requested that his right to file post sentence motions and his right to file a direct appeal be reinstated.

On April 17, 2009, the PCRA court granted the Defendant's PCRA petition in part and denied it in part. The court granted the Defendant's right to file a direct appeal Nunc Pro Tunc.

---

[8] 18 Pa.C.S. 6301(a)(1)
[9] 18 Pa. C.S. 3127

2

The court denied the Defendant's right to file post-sentence motions Nunc Pro Tunc since the Defendant had already filed post-sentence motions which were denied.

On May 5, 2009, the Defendant filed a notice of appeal.

On July 6, 2013, J. Matthew Wolfe, Esquire, on behalf of the Defendant, filed an Amended PCRA petition, raising claims of ineffective assistance of counsel.

The Commonwealth filed a motion to dismiss on April 7, 2014.

An evidentiary hearing on the Amended PCRA Petition was held on June 2, 2014 and the PCRA court denied relief.

On June 2, 2014, the PCRA court sent the Defendant notice pursuant to Pa.R.Crim.P. 907 of the PCRA court's intent to dismiss his PCRA Petition, explaining that the issues raised in his PCRA were without merit. No response was filed to the PCRA court's Rule 907 notice.

On July 15, 2014, the PCRA court formally dismissed Defendant's PCRA Petition.[10]

On August 14, 2014, the Defendant filed a notice of appeal to the Superior Court of Pennsylvania.

## FACTS

Between the years 1996 and 2002, the Defendant engaged in multiple sexual crimes against four (4) victims. Three of the victims, LM, TM, and KM are the Defendant's step-daughters. The other victim, TT is the non-biological niece of the Defendant.

TM testified that when she was approximately nine (9) years old, the Defendant asked her and her cousin, TT, if they wanted to join a club. After they indicated that they did want to join the club, the Defendant sent them to the store to buy candy and chips. When they came

---

[10] The Defendant filed an untimely Request for Reconsideration of the Court's Order. Defendant's Request was postmarked August 4, 2014. Under the prisoner mailbox rule, we deem a pro se document filed on the date it is placed in the hands of prison authorities for mailing. The Defendant filed a Request to Proceed in Pro Se as a Constitutional Right postmarked October 27, 2014.

3

back from the store, TM and TT went to the upstairs to build a tent with sticks and blankets. TM saw TT, LM and KM go into the tent one at a time while the Defendant was inside the tent. (Notes of Testimony, January 3, 2006, pages 24 – 27).

TM testified that when she was approximately ten (10) years of age, the Defendant woke her up and asked her if she wanted to play video games. After playing video games, the Defendant told TM to lie on the floor and to pull down her pants. TM complied. The Defendant put his fingers between the lips of TM's vagina and put his mouth on her vagina. The Defendant then put his penis between her legs and touched around her vagina with his penis. The Defendant then told TM to go back upstairs and go to sleep. (NT, supra, pages 29 – 32).

TM testified regarding another incident, wherein she saw the Defendant with KM behind the door of her mother's bedroom. She heard KM say to the Defendant that, "she (KM) can't do this". The Defendant told everyone else that was also in the bedroom to leave except KM because, "they was doing something". Later, KM told TM that the Defendant wanted her to go back into the bedroom. When TM went to the bedroom, the Defendant told her to lie down on the floor on her back. The Defendant pulled down her pants and tried to put his penis into her vagina. (NT, supra, pages 36 – 39).

TM testified regarding another incident, wherein the Defendant came into her bedroom. He told TM to get on her knees. The Defendant attempted to put his penis in TM's mouth. The Defendant's penis touched her lips but did not go inside her mouth. The Defendant left TM's bedroom when he heard her mother come in the front door. (NT, supra, pages 42 – 43).

TM testified regarding another incident, wherein she was sleeping in the back bedroom with her brother. The Defendant came into the room and told her to come into her mother's bedroom. As she lay down on her mother's bed and was falling asleep, the Defendant pulled her

4

pants partly down. The Defendant got something like pink powder and put it on her vagina. He then started licking her vagina. (NT, supra, pages 43 – 44).

TM testified regarding another incident, wherein all the girls were playing cards with the Defendant on her mother's bed. The Defendant told them that if anybody loses, they have to remove a piece of their clothing. She did not remember what she took off. The Defendant took off his shirt. Everybody left the room when they heard her mother coming in the downstairs door. (NT, supra, page 45).

TM testified that she saw the Defendant put his penis in the mouths of LM and KM. (NT, supra page 48).

TM testified regarding another incident, wherein the Defendant told her, LM, KM and TT that if they would strip for him, he would throw money at them. TM did not remember what clothes she removed during this incident. (NT, supra, page 53).

TM testified that the Defendant would give her money. On one occasion she used the money the Defendant gave her to buy something for her mother. When her mother asked her where she got the money, she told her mother she got it from the Defendant. When her mother questioned her as to why the Defendant gave her money, TM told her mother that the Defendant gave her the money because she would, "let him lick my vagina and everything, stuff like that". TM told her mother the Defendant was also doing things to her cousin, TT, and her sisters, LM and KM. (NT, supra pages 46 – 47).

TT testified that when she was about ten (10) years old, on two occasions, the Defendant after telling her to pull down her pants, touched around her vagina with his mouth. (NT, supra, pages 122 – 123). She testified that she told LM what the Defendant had done to her. (NT, supra, page 126).

5

ST, TTs mother, testified that in April, 2002, she asked TT if anything had happened with the Defendant. TT told her the Defendant, "had licked her putty cat". ST did not call the police. A couple of months later, the Defendant came to her house with a bible in his hand and said he apologized for what had happened to TT. (NT, supra, pages 141 – 145).

LM testified that when she was around six (6) years of age, the Defendant touched her butt and chest with his hands on top of her clothing. (Notes of Testimony, January 4, 2006, pages 7 -8). She further testified, that on a subsequent occasion, the Defendant told her to lie down on the floor and licked her vagina. The Defendant then got on top of her and put his penis half way inside her vagina. The Defendant then put his fingers between the lips of her vagina. After the incident, the Defendant gave LM $20.00. (NT, supra, page 8 - 12).

LM further testified that on two (2) occasions, the Defendant came into her room, pulled down her pants and licked her vagina. The Defendant gave her $20.00 after each incident. (NT, supra, page 13 – 16, 19). LM testified that the Defendant had put his mouth on her vagina more than five (5) times.

LM testified regarding another incident, wherein the Defendant came into the bathroom and asked her, "Do I know how to suck a lollipop". The Defendant told her to get down on her knees. He pulled down his pants and put his penis in her mouth. (NT, supra, page 17).

LM testified regarding another incident, wherein the Defendant grabbed her by the throat with his hand and told her that he was doing this because of something her mother had done. (NT, supra, page 19-20).

LM testified that she saw the Defendant licking TT's vagina. (NT, supra, page 22-23).

LM testified that she recalled KM and TM taking off their clothes and dancing while the Defendant threw money at them. (NT, supra, page 24 – 25).

6

LM testified that her mother called her at her grandmother's house after TM had told her mother what had been going on with the Defendant. She told her mother that the Defendant was "being fresh" with her. When her mother asked her specifically what the Defendant had done to her, she told her mother that the Defendant did nothing to her. She testified that she said the Defendant did not do anything because she was afraid her mother would get mad at her. (NT, supra pages 27 – 33).

LM testified that sometime in May of 2004, while she was in counseling, after a suicide attempt, she told a counselor that she had been molested by the Defendant. She also told a DHS worker from Montgomery County about what had happened to her. (NT, supra, pages 37).

KM testified that she recalled making a tent with the Defendant. She recalled that she was sitting on the left side, the Defendant was sitting in the middle and that TM was sitting on the right side. The Defendant touched their chests and their butts with his hands underneath their clothing.

KM testified that in another incident, the Defendant came into her bedroom, picked her up and took her into her mother's bedroom. He laid KM on the floor, pulled down her pants and started licking her vagina. The Defendant made a cut on the inside of her vagina when he tried to put his finger halfway in the hole of her vagina. (NT, supra, pages 83 – 88).

KM testified that the next night, the Defendant woke her up and told her to come into the bathroom. The Defendant was sitting on the edge of the tub. He started crying. He told KM not to tell her mother because he could go to jail. (NT, supra, pages 89 – 90).

KM testified regarding another incident wherein the Defendant called her down from upstairs and asked her if she had a boyfriend. The Defendant came over to her while she was

sitting on the couch, knelt down on the floor, pulled her pants down and started licking her vagina. (NT, supra, pages 90 – 91).

KM testified regarding another incident wherein the Defendant came in her mother's bedroom and asked her whether she had ever touched a boy's private area. The Defendant lay down on the bed, and took out his penis. KM touched his penis with her hand. The Defendant then put his penis in her mouth. Afterwards, the Defendant gave her quarters from out of his pockets. (NT, supra, page 91 – 93).

KM testified regarding another incident wherein she was in her mother's bedroom watching television. The Defendant came into the room and closed the door. The Defendant laid her on the floor behind the door and pulled down her pants. The Defendant put his mouth on her vagina. The Defendant then put the tip of his penis halfway in the hole of her vagina. (NT, supra, page 94 – 95, 98).

KM testified regarding another incident wherein she was coming out of the bathroom door when the Defendant came in the bathroom and shut off the light. The Defendant laid her down on the floor beside the tub, pulled her pants down and started licking her vagina. (NT, supra, page 95).

KM testified that on one occasion she saw TT getting up off the floor, fixing her pants and the Defendant was getting up off his knees. (NT, supra, page 100).

KM testified that she told her mother about the Defendant licking her vagina and about when the Defendant had tried to put his penis in her vagina. (NT, supra, page 101 – 102).

## ANALYSIS

In his Amended PCRA petition, the Defendant claims that trial counsel was ineffective for failing to present character evidence at trial. Defendant also claims that trial counsel was

8

ineffective for failing to object to the lack of particularity in the minor witness's testimony at trial. Both claims are without merit.

The PCRA court ruled that there was no merit to the Petitioner's claims of ineffective assistance of counsel. (Notes of Testimony, June 2, 2014, pages 2-4). Failure to call a witness on a defendant's behalf is not per se ineffectiveness. *Com. v. Glover*, 619 A.2d 1357, 1359 (Pa. Super. 1993). The law presumes that counsel was effective. The defendant carries the burden of proving ineffectiveness. *Com. v. Baker*, 614 A.2d 663, 673 (Pa. 1992).

There are two requirements for relief on an ineffectiveness claim for a failure to present witness testimony. The first requirement is procedural. The PCRA requires that, to be entitled to an evidentiary hearing, a petitioner must include in his PCRA petition "a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony." *Com. v. Reid*, 99 A.3d 427, 438 (Pa. 2014) (citing 42 Pa.C.S. § 9545(d)(1)). The second requirement is substantive. To establish ineffectiveness for failing to call witnesses, the petitioner must demonstrate that the witnesses were available, that counsel knew or should have known of their existence, that the witnesses were prepared to testify for the defense, and that their absence was so prejudicial that the petitioner was denied a fair trial. *Com. v. Van Horn*, 797 A.2d 983, 987 (Pa. Super. 2002) (citing *Com. v. Priovolos*, 715 A.2d 420 (Pa. 1998)). Prejudice in the context of ineffective assistance of counsel means the Defendant must establish that there is a reasonable probability that, but for counsel's alleged errors, the outcome of the trial would have been different. *Com. v. Bond*, 819 A.2d 33, 42 (Pa. 2002). The Court must reject the ineffectiveness claim if a Defendant fails to satisfy any prong of the test. *Com. v. Fulton*, 830 A.2d 567, 572 (Pa. 2003).

9

The certification included with Petitioner's Amended PCRA Petition, signed by Petitioner's PCRA counsel, indicates that "Joel Flowers" would be expected to be available to testify at an evidentiary hearing. The certification also indicates that Mr. Flowers was expected to testify that he was available at the time of trial and that he would testify as to Petitioner's reputation for being a peaceful, honest, and law abiding person. Mr. Flowers address is indicated as a P.O. Box and his date of birth is indicated as unknown. (See Certification, attached to Petitioner's Amended PCRA Petition).

The certification provided by PCRA counsel regarding Mr. Flowers is inadequate to sustain his burden of demonstrating that this witness exists; that this witness was available to testify at Petitioner's trial; or that counsel knew or should have known that this witness existed. *Com. v. Brown*, 767 A.2d 576, 584 (Pa. Super. 2001). Furthermore, the certification is inadequate to sustain the Petitioner's burden of demonstrating how the absence of Mr. Flowers' testimony prejudiced him. *See Com. v. Lopez*, 739 A.2d 485, 496 (Pa. 1999), cert. denied, 530 U.S. 1206 (2000) (trial counsel will not be deemed ineffective for failing to call two witnesses which appellant specifically named in his PCRA Petition since appellant did not provide any objective proof that the witnesses actually existed or were willing to testify on his behalf); *Com. v. Jones*, 652 A.2d 386 (Pa. Super. 1995), app. denied, 663 A.2d 688 (Pa. 1995) (where trial counsel is alleged to have been ineffective for failing to call witnesses, but there is no positive evidence that witness would have provided testimony helpful to the defense, there is no evidentiary basis for grant of new trial). Counsel cannot be considered ineffective for failing to raise a claim without merit.

Moreover, the Petitioner had a prior conviction for Receiving Stolen Property, which may have been used in cross-examination as to Mr. Flowers' testimony as to Petitioner's reputation

10

for being an honest and law-abiding citizen. (CP-51-CR-0705541-1994). "If a reasonable basis exists for the particular course chosen by counsel, the inquiry ends and counsel's performance is deemed constitutionally effective." *Com. v. Abdul-Salaam*, 808 A.2d 558, 561 (Pa. 2001); *Com. v. Michaud*, 70 A.3d 862 (Pa. Super. 2013) (trial counsel's decision to not present testimony of character witnesses concerning defendant's good reputation was part of reasonable trial strategy in sex offense prosecution involving an admitted inappropriate touching of a 10-year-old victim by the 75-year-old defendant). Therefore, it was a reasonable strategy for trial counsel to not present character evidence where there was a possibility that the Petitioner's prior conviction would be presented.

The Petitioner's claim that trial counsel was ineffective for failing to object to the lack of particularity in the minor witness's testimony at trial is unsubstantiated and unworthy of credence. Although it is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty," the Commonwealth does not always need to prove a specific date of an alleged crime. *Com. v. Brooks*, 7 A.3d 852, 857-58 (Pa. Super. 2010) (quoting *Com. v. Devlin*, 333 A.2d 888, 892 (Pa. 1975). Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. *Brooks*, 7 A.3d at 858 (citing *Com. v. Einhorn*, 911 A.2d 960, 978 (Pa. Super. 2006).

Case law has further "established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Com. v. G.D.M., Sr.*, 926 A.2d 984, 990 (Pa.Super.2007) (quoting *Com. v. Groff*, 548 A.2d 1237, 1242 (Pa. Super. 1988)). This is especially true when the case involves sexual offenses against a child victim. *Id.* In accordance with the case law, this Court acknowledged that "when you have young witnesses testifying to a traumatic event, we give them some leeway. . ."

11

N.T. 6/2/14 at pp. 3-4. The Court observed the demeanor of the witnesses and listened very carefully to their testimony. "The Court found them to be very credible and they did give time frames . . ." *Id.* at 4:8-13. "There is no merit to either claim." *Id.* at 4:18-19.

## CONCLUSION

Based on the foregoing, the July 15, 2014 dismissal of the Petitioner's PCRA Petition should be affirmed.

By the Court:

Rose Marie DeFino-Nastasi, J.

12

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :      CP-51-CR-0601281-2005

v.                 :      2396 EDA 2014

CURRY ROBINSON          :

                       :

**OPINION**

Rose Marie DeFino-Nastasi, J.

**FILED**

JUN 2 2015

Criminal Appeals Unit
First Judicial District of PA

## PROCEDURAL HISTORY

On January 12, 2015, the Appellant was found guilty after a jury trial, presided over by the Honorable Rose Marie DeFino-Nastasi, of one count of Rape of a child less than thirteen years of age, 18 Pa.C.S. § 3121(c), as a felony of the first degree; one count of Involuntary Deviate Sexual Intercourse (IDSI) of a child less than thirteen years of age, 18 Pa.C.S. § 3123(b), as a felony of the first degree; two counts of Aggravated Indecent Assault – Child, 18 Pa.C.S. § 3125(b), as a felony of the third degree; four counts of Endangering the Welfare of Children (EWOC), 18 Pa.C.S. § 4304, as a felony of the third degree; three counts of Unlawful Contact with a Minor, 18 Pa.C.S. § 6318, as a misdemeanor of the first degree; four counts of Indecent Assault, 18 Pa.C.S. § 3126(a)(7), as a misdemeanor of the first degree; one count of Terroristic Threats, 18 Pa.C.S. § 2706, as a misdemeanor of the first degree; four counts of Corrupting the Morals of a Minor (CMOM), 18 Pa.C.S. § 6301(a)(1), as a misdemeanor of the first degree; and two counts of Indecent Exposure, 18 Pa.C.S. § 3127, as a misdemeanor of the first degree.

On May 19, 2006, the Court conducted a Megan's Law hearing and the Appellant was found to be a sexually violent predator (SVP). The Appellant was sentenced that same day to an aggregate sentence of seven-and-a-half (7 ½) to fifteen (15) years, followed by five (5) years

1

reporting probation. Specifically, the sentencing court imposed five (5) to ten (10) years imprisonment for the rape conviction; a concurrent five (5) to ten (10) years for the IDSI conviction; and two-and-a-half (2 ½) to five (5) years imprisonment for the aggravated indecent assault conviction, to run consecutively to the sentence for the rape conviction. The Appellant was sentenced to five (5) years reporting probation for the Unlawful Contact with a Minor conviction, to be served consecutively to the sentence for the aggravated indecent assault conviction.

On May 31, 2006, Appellant's Post Sentence Motion was denied without a hearing.

On June 26, 2006, Appellant appealed to the Superior Court of Pennsylvania.

On February 26, 2008, the Superior Court affirmed the sentence of the trial court and held that Appellant had not preserved his claims for review because of the vagueness of his 1925(b) Statement. *Com. v. Robison*, No. 1753 EDA 2006 (Pa. Super. Feb. 26, 2008). Appellant was represented by Christopher Montoya, Esq. at trial.

On April 8, 2008, Appellant filed a *pro se* petition under the Post Conviction Relief Act (PCRA) asserting a multitude of ineffective assistance of counsel claims, including: Mr. Montoya's failure to submit a clear and concise 1925(b) statement; failure to present character witnesses; failure to object to the trial judge's cross-examination and questioning of the complainants; and ineffective assistance for forcing Appellant to take a bench trial instead of a jury trial.

John Cotter, Esq. was appointed PCRA counsel and filed an amended PCRA petition on October 10, 2008, arguing for reinstatement of Appellant's direct appeal rights and the right to file additional post-sentence motions.

On April 16, 2009, the PCRA court granted Appellant's PCRA petition in part, and denied it in part. The court granted Appellant's right to file a direct appeal nunc pro tunc, but denied his request for leave to file additional post-sentence motions.

On May 5, 2009, Appellant filed a notice of appeal.

On January 10, 2011, the Superior Court affirmed. *Com. v. Robinson*, No. 1343 EDA 2009 (Pa. Super. Jan. 10, 2011). A copy of the Opinion is attached hereto as Exhibit A.

On July 19, 2011, the Supreme Court of Pennsylvania denied Appellant's Petition for Allowance of Appeal.

On November 16, 2011, Appellant filed a *pro se* PCRA petition[1], claiming trial court bias; ineffective assistance of counsel based on Mr. Montoya's failure to obtain and submit crucial rebuttal and possible exculpatory evidence; sufficiency of the evidence as it pertained to the testimony of the complainants; and that trial counsel was appointed too close to the time of trial.

J. Matthew Wolfe, Esq. was appointed PCRA counsel and filed an amended PCRA petition on July 6, 2013, claiming that:

1. Trial counsel was ineffective for failing to present character evidence.

2. Trial counsel was ineffective for failing to object to the lack of particularity in the evidence presented by the prosecution or to raise the issue on direct appeal, i.e. the Commonwealth's evidence regarding the specific dates that the Appellant committed the sexual offenses.

On April 7, 2014, the Commonwealth filed a motion to dismiss.

---

[1] Appellant's November 16, 2011, PCRA petition is treated as his first petition because his earlier petition resulted in the reinstatement of his appellate rights nunc pro tunc. *See Com. v. Vega*, 754 A.2d 714, 716 n.3 (Pa. Super. 2000).

3

On June 2, 2014, the PCRA court held an evidentiary hearing and found that there was no merit to either of Appellant's ineffective assistance of counsel claims. N.T. 6/2/14 at pp. 1-5; *See* PCRA Court's December 4, 2014 Opinion attached hereto as Exhibit B.

On June 2, 2014, the PCRA court issued a 907 notice.

On June 25, 2014, Appellant filed an untimely response to the PCRA court's 907 notice and a Motion to Proceed Pro Se, a copy of which is attached hereto as Exhibit C.

On July 15, 2014, the PCRA court formally dismissed Appellant's PCRA petition.

On August 4, 2014, Appellant filed an untimely Request for Reconsideration of the Court's Order. *See* Exhibit B at fn. 10.

On August 14, 2014, Appellant appealed to the Superior Court.

On October 27, 2014, Appellant mailed to chambers a request that the PCRA court vacate its Order dismissing Appellant's PCRA petition, and to allow him to proceed pro se to amend his formally dismissed PCRA petition.

On December 4, 2014, the PCRA court issued its Opinion. *See* Exhibit B.

On January 1, 2015, Appellant mailed to chambers a Notice of Intent to File a Writ of Mandamus Due to Court's Failure in Responding to Appellant's Request to Proceed Pro Se. This Court responded to Appellant via first class mail on January 16, 2015, advising him that all motions must be filed in the Superior Court.

On February 5, 2015, Appellant filed a Request to Proceed Pro Se in the Superior Court.

On February 25, 2015, the Superior Court remanded to this Court to conduct a hearing pursuant to *Com. v. Grazier*, 713 A.2d 81 (Pa. 1998).

On April 2, 2015, this Court conducted a *Grazier* hearing and found that the Appellant knowingly, intelligently, and voluntarily waived his right to counsel, and permitted him to proceed pro se in his appeal.

Although the PCRA court did not order Appellant to file a 1925(b) Statement of Matters Complained of on Appeal at any time between the filing of Appellant's appeal to the Superior Court on August 14, 2014, and the issuance of the PCRA court's Opinion on December 4, 2014, Appellant filed a Petition for Remand to the Trial Court for the Purpose of Amending 1925(b) on April 10, 2015.

On April 29, 2015, the Superior Court remanded to the PCRA court for a period of sixty (60) days to permit the Appellant to file a supplemental 1925(b) Statement within twenty-one (21) days, and requested that the PCRA court prepare a supplemental opinion in response to Appellant's supplemental 1925(b) Statement within thirty (30) days of the date the statement is received.

Appellant filed a 1925(b) Statement with the Clerk of Courts on May 11, 2015. Evident from the Certificate of Service attached to Appellant's 1925(b) Statement, Appellant did not serve a copy of his 1925(b) Statement on this Court. *See* Appellant's 1925(b) Statement attached hereto as Exhibit D. On May 28, 2015, this Court received Appellant's 1925(b) Statement in chambers via electronic filing by the Clerk of Courts. In his 1925(b) Statement, Appellant argues the following:

1. Appellant was denied meaningful review of his PCRA petition due to PCRA counsel's ineffectiveness and the PCRA court's failure to properly address Appellant's response to the 907 notice "where there are underlying issues not raised."

5

2. Trial counsel was ineffective for failing to object to the lack of specificity in the complainants' testimony regarding the specific dates that the Appellant committed the sexual offenses.

3. Trial counsel was ineffective for failing to use Appellant's county incarceration and work history to establish an alibi defense.

4. As Appellant states: "Waiver of Appellant's S.V.P. [Sexually Violent Predator] hearing was made unknowingly, unvoluntarily [sic], and unintelligently, i.e. false statement made on record by counsel in court as to speaking to Doctor Foley on Appellant's behalf."

5. Trial counsel was ineffective for failing to present character witnesses or consult Appellant on the importance of such witnesses. PCRA counsel was ineffective for failing to meet the certification required for a character witness.

6. Trial counsel was ineffective for failing to object to the trial court's "mischaracterization of facts which prejudiced Appellant," i.e. "Summary of Fact" alleging complainant TM was approximately nine (9) years-old at the time of the "tent event" and the time of the assaults being from 1996 to 2002 for all four complainants.

7. Trial counsel was ineffective for failing to lodge a timely objection to each instance of "objectionable questioning and interjections by the court which advocated the burden of proof in favor of the prosecutor . . ."

8. Trial counsel was ineffective for failing to investigate hospital records from alleged similar events in accordance with Pennsylvania Rule of Evidence 404.

9. The prosecutor presented witnesses who committed perjury at trial.

10. "Appellant suffered cumulative ineffectiveness and layered ineffectiveness [sic] assistance of counsel due to the dereliction of all prior counsels."

## FACTS

A statement of the pertinent facts of this case is set forth in this Court's December 4, 2014 Opinion. Exhibit B at pp. 3-8.

## ANALYSIS

### Issues 1

In his 1925(b) Statement, Appellant blankly asserts that PCRA counsel was ineffective. On June 2, 2014, the PCRA court issued a 907 notice. On June 25, 2014, Appellant filed an untimely response to the PCRA court's 907 notice. Consequently, any claim as to PCRA counsel's ineffectiveness is waived because Appellant did not raise it in the PCRA court during the 20-day response period provided by Pa.R.Crim.P. 907(1). *See Com. v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Appellant also asserts that he was denied meaningful review of his first PCRA petition due to this Court's failure to address Appellant's response to the 907 notice. Again, Appellant did not respond within the 20-day response period, and therefore, this issue is waived.

### Issue 2

Appellant asserts that trial counsel was ineffective for failing to object to the lack of specificity in the complainants' testimony regarding the specific dates that Appellant committed the sexual offenses. This Court adopts its analysis as set forth in its December 4, 2014 Opinion. Exhibit B at pp. 11-12.

7

## Issue 3

In his PCRA petition, Appellant claims that trial counsel was ineffective for failing to provide alibi defense evidence. Appellant's alibi claim is without arguable merit, and therefore, trial counsel cannot be held ineffective for failing to assert it.

In his 1925(b) Statement, Appellant asserts that he was incarcerated from June 2002 to November 2002, and therefore could not have committed the sexual assaults against complainant TT in the summertime. N.T. 1/3/06 at pp. 120-22. He likewise asserts that his incarceration would have provided an alibi defense against complainant LM's testimony that she saw Appellant licking TT's vagina in the summertime. N.T. 1/4/06 at pp. 22-24.

An alibi is "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Com. v. Rainey*, 928 A.2d 215, 234 (Pa. 2007) (citing *Com. v. Roxberry*, 602 A.2d 826, 827 (Pa. 1992) (citations omitted)). To show ineffectiveness for not presenting alibi evidence, Appellant must establish that counsel could have no reasonable basis for his act or omission. *See Com. v. Carpenter*, 725 A.2d 154, 163 (Pa. 1999).

A reasonable basis for not introducing Appellant's purported alibi evidence is readily apparent from the record. Trial testimony evinced that Appellant committed sexual assaults against the complainants from 1996 to 2002. Appellant was charged with Attempted Theft of Services and related offenses on June 16, 2002. These charges were dismissed before the Honorable Teresa Carr Deni on November 7, 2002. A copy of Appellant's extract is attached hereto as Exhibit E. This Court is unable to determine whether Appellant was actually incarcerated during this time. Importantly, however, Appellant's alleged incarceration would not provide an alibi defense for the multiple sexual assaults testified to by each of the complainants

that occurred prior to June 2002. Nor would it render it impossible for the sexual assaults testified to by TT and LM to have happened in the summertime. Counsel cannot be held ineffective for failing to assert a meritless defense. Therefore, no relief is due.

## Issue 4

Appellant asserts that trial counsel was ineffective for failing to inform Appellant that he could call witnesses,[2] expert witnesses,[3] and testify on his own behalf[4] at his SVP hearing; that the stipulation to the SOAB's report was made without his consent[5]; and that trial counsel lied about speaking to Dr. Timothy Foley regarding the SOAB's finding that Appellant was a SVP.[6]

Appellant does not challenge the propriety of his conviction or sentence. Rather, he seeks to challenge the method by which he was determined to be a SVP. This claim is not cognizable under the PCRA. *Com. v. Masker*, 34 A.3d 841 (Pa. Super. 2011), app. denied, 47 A.3d 846 (Pa. 2012) (no meaningful difference between a challenge to the determination that appellant is a SVP and a challenge to the process by which that determination was reached).

## Issue 5

Appellant asserts that trial counsel was ineffective for failing to present character witnesses. This Court adopts its analysis as set forth in its Opinion. Exhibit B at pp. 8-10.

---

[2] Appellant's mother testified at the SVP hearing. N.T. 5/19/06 at pp. 29-32.

[3] Trial counsel contacted defense expert Timothy Foley, Ph.D. to counter the Commonwealth's evidence. Dr. Foley stated that he could not assist in Appellant's case based on his review of the SOAB's report. *Id.* at p. 10.

[4] Appellant exercised his right of allocution. *Id.* at pp. 22-29.

[5] Trial counsel stated at the SVP hearing that he discussed with Appellant the reasons why they stipulated to the facts of the SOAB's report. *Id.* at pp. 9-11.

[6] Appellant attached a letter addressed to him from Dr. Foley in support of this proposition. This Court contacted Dr. Foley on June 1, 2015, and obtained a copy of the fax transmission sent to Dr. Foley from Mr. Montoya, as well as Dr. Foley's Scoring Worksheet whereby he determined that he could not assist in Appellant's SVP hearing. A copy of these documents is attached hereto as Exhibit F.

Appellant also asserts that PCRA counsel was ineffective for failing to meet the certification required for a character witness. Any claim as to PCRA counsel's ineffectiveness is waived because he did not raise it in the PCRA court during the 20-day response period provided by Pa.R.Crim.P. 907(1).

## Issues 6

Appellant asserts that trial counsel was "ineffective for failing to object to [the] Court's mis-characterization [sic] of facts which prejudiced Appellant in further review on appeal." Specifically, that complainant TM was approximately 9 years-old at the time of the "tent" incident and that the sexual assaults occurred from 1996 to 2002.

This claim was not raised in Appellant's PCRA petition and, accordingly, is waived for that distinct reason. *Com. v. Lambert*, 797 A.2d 232, 240-41 (Pa. 2001) (citing *Com. v. Basemore*, 744 A.2d 717, 725 (Pa. 2000)).

## Issue 7

Appellant asserts that trial counsel was ineffective for failing to object to, as Appellant states, "each instance of objectionable questioning and interjections by the [trial] court which advocated the burden of proof in favor of the prosecutor." In his PCRA petition, Appellant raises this issue as one of trial court bias, arguing that this Court was "[i]mpartial [] for stopping [his] counsel from asking questions that directly effect [sic] witness credibility." *See* Appellant's November 11, 2011 PCRA petition at p. 3.

This Court views Appellant's 1925(b) Statement as to Issue 7 as so vague as to impede meaningful review, the equivalent to none at all, and therefore waived. *See Com. v. Stetler*, 95 A.3d 864, 887 (Pa. Super. 2014), app. denied, 108 A.3d 35 (Pa. 2015).

## Issue 8

Appellant asserts that trial counsel was ineffective for failing to investigate hospital records from alleged similar events in accordance with Pennsylvania Rule of Evidence 404, thereby "prejudicing Appellant from any further attacks on the credibility" of the complainants. This issue is waived as it is too vague to permit meaningful review and was not raised in Appellant's PCRA petition. *See Stetler*, 95 A.3d at 887.

## Issue 9

Appellant asserts that the Commonwealth presented witnesses who committed perjury at trial to bolster their case and to establish their burden of proof. Specifically, that Edna Taylor committed perjury when she testified that complainants LM, KM, and TM attended therapy sessions with a psychiatrist. N.T. 1/4/06 at pp. 158-59. Although raised in Appellant's PCRA petition, this claim is not cognizable under the PCRA. 42 Pa.C.S. § 9543.

## Issue 10

Appellant lastly argues cumulative ineffectiveness "due to the dereliction of all prior counsels." This claim is too vague to permit meaningful review, and as demonstrated above, each of Appellant's ineffective assistance of counsel claims fail.

## CONCLUSION

Based on the foregoing, the dismissal of Appellant's PCRA petition should be affirmed.

By the Court:

Rose Marie DeFino-Nastasi, J.

11